McKinney, J.,
delivered the opinion of the Court.
Daniel Jones died intestate in Claiborne county, in June, 1845, leaving a widow and three infant children surviving him. Administration on his estate — which consisted of only a small amount of personalty — was granted to Joseph II. Davis.
Some years before his death, the intestate owned a tract of land in Claiborne county, which he conveyed by deed of trust to secure certain debts due from him to Jacob Shultz and William Houston, severally. Said debts not being paid at the time stipulated in the deed of trust, the land was sold by the trustee, and was purchased by the creditors, Shultz and Houston. The time for redemption expired, and the title became absolute in the purchasers, som'etime before the death of said Daniel Jones.
After the death of said Jones, Shultz and Houston consented that, if the widow would pay to them the amount of their respective debts, with the interest which had accrued thereon, *204 they would convey to her said tract of land. And the land being of double the value of the amount of said debts, the widow undertook tu do so. The two debts together amounted to about the sum of $550. In order to raise the purchase money, the widow made a note for $500, which was indorsed by some of her friends, and was discounted in bank. The proceeds of said note were paid to Shultz and Houston, who, thereupon, made a conveyance for said tract of land to the widow, in absolute fee simple.
Shortly after this transaction, the widow intermarried with the complainant, Clark, who entered into possession of said land, and occupied the same until some time after the death of his wife, which happened in 1852 — having retained the possession for a period of some six or seven years.
After the death of Mrs. Clark (formerly the widow of said Daniel Jones,) her three sons, the issue of the marriage with said Jones, claimed said tract of land as having descended to them as heirs of their mother; and, on arriving at age, sold and conveyed the same to defendant, Cantwell.
Complainant alleges, and there is proof tending to show, that, after his marriage with the widow, he paid the amount of the debt due to the bank, which had been created by her in the purchase of said land, out of his own means. It also appears, that an arrangement was made between the complainant and Davis, the administrator, by which the latter surrendered to complainant the assets of the estate, on his agreeing to assume the payment of the debts of the estate; and under this agreement, the complainant alleges that he paid out, perhaps, upwards of $200 more than the amount of the assets received from the administrator. The complainant further alleges, that he made advances to, and paid debts, from time to time, for each of the three children of his wife by her former husband, amounting in all to a considerable sum.
The bill assumes, that the complainant has a valid lien on said tract of land, to reimburse him the five hundred dollars paid to the bank; also, the two hundred dollars paid by him in discharge of debts due from the estate of Jones, beyond *205 the assets received from the administrator; and likewise the several sums paid to and for the children of his wife. And this relief is claimed, as well against the children and heirs of the wife, as against Cantwell, the purchaser from them, on the ground that he purchased with full knowledge of the facts, which is shown to be true.
This claim to relief is based upon the hypothesis, that the transaction between the widow and Shultz and Plouston, in relation to the land, was not a purchase by her for her own benefit; but that, both in intention and legal effect, it was simply a redemption of the land, by the consent of the purchasers, after the expiration of the period for redemption. And that the purpose of all the parties was, to restore the title to the estate of Daniel Jones, and to place the land in the same condition as if it had been redeemed by said Jones in his lifetime, not only as regarded the rights of the widow and heirs at law of the intestate, Jones, but also as regarded the rights of the creditors of his estate.
There is a labored effort in the amended bill, and in the evidence, to give the case this complexion, though in the original bill the contrary was alleged; it is there distinctly stated to have been a purchase by the widow, and, impliedly, for her own benefit.
If the case, as presented in the amended bill, were made out, there can be little doubt that the complainant would be entitled to relief, at least to the extent of the money advanced by the widow to Shultz and Houston.
Suppose the widow to have redeemed the land, with her own money, within the time limited by the statute for redemption, what would have been the legal consequences ? Unquestionably, a trust would have been implied in favor of the heirs; and upon refunding the redemption money, or their just proportion of it, they would have become entitled to the estate in fee, subject to the dower interest of the widow. In what proportions the widow and heirs should contribute, in such a case, is a question not presented in this- record. In the case just supposed, there can be no doubt that the widow would have *206 had a lien on the entire tract of land for reimbursement of the redemption money; and, on failure of the heirs to pay, she might have subjected their interest in the land to its satisfaction. This being so, upon the subsequent marriage of the widow, the lien would inure to the husband, as a chose in action of the wife; and, a fortiori, would the lien so inure, in case the payment of the redemption money had fallen upon the husband, after the marriage.
If the foregoing position be correct, it would seem to follow, that, where the redemption was effected by the widow — by the voluntary agreement of the parties in interest — after the expiration of the time limited by the statute, but with the intention that the effect should be the same as if the redemption had been regularly made in proper time, the rights of the respective parties would be the same as in the preceding case.
But, the extent of the lien, in such case, would be for the redemption money and incidental charges. The redemption of the land, under such circumstances, would be regarded, in law7, as a purchase for the exclusive benefit of the widow and heirs; and it would not be subject, in their hands, to the pre-ex-isting debts of the estate of the deceased husband and father. And if the creditors of the decedent could not directly subject it, it is clear that the widow, or her after husband, could not — • as against the heirs — indirectly charge it, by reason of having paid debts of the estate; such payments were voluntary, and at the peril of the person making them; and the heirs cannot be held liable therefor in any manner. And it is equally clear, that advances in money, voluntarily made by the widow or by her subsequent husband, to the heirs, cannot create a lien upon the land: such advances constitute a mere personal liability.
But the complainant has failed to establish the facts stated in the amended bill; the weight of the proof, and the presumption of law7, are against the assumptions of the bill.
The title to the land, as before stated, had become absolute in Shultz and Houston, in the lifetime of Daniel Jones, by his failure to redeem. Shultz proves, that on the application of *207 Mrs. Jones, after tlie death of her husband, he and Houston agreed to let her have the land, provided she would pay the amount of their claims, and the costs incident to the execution of the trust. And, accordingly, the land was conveyed to her unconditionally, in fee simple.
It is true, that Davis, the administrator of Jones’ estate, proves that he suggested to the widow the arrangement of getting the purchasers of the land “ to convey it hack to her, by paying their claims,” * * * “ and by so doing, make the estate in a condition not to report it insolventand he further states, that “ when the land was conveyed to Mrs. Jones, she agreed, verbally, that it should stand good for the hank debt, and the other liabilities of the estate.”
It is very clear, that, if parol evidence of this agreement wTere admissible, the agreement itself — so far, at least, as respects “the other liabilities of the estate,” — was simply a nudum pactum.
The legal effect of the transaction, in view of all the facts, was to invest Mrs. Jones with the legal title, as owner in fee of the land. The parol evidence relied on, if admissible, is insufficient to give the case a different complexion. If it were to he conceded that a trust existed, or rather would have existed in favor of the heirs, upon their contributing towards the redemption money, it is sufficient to say, that they did not contribute, or offer to do so, in the lifetime of their mother; and, consequently, she died the absolute owner of said land; and having died intestate, it of course descended to her heirs at law — the three children of her former marriage with Daniel Jones; there being no issue of the subsequent marriage with the complainant.
From this view of the case, it follows, that the complainant is entitled to no relief, as respects his payment of the bank debt, with which money the land was purchased. This was the debt of his wife, existing at the time of the marriage, and in discharging it, he merely acquitted himself of a legal obligation resulting from the marriage relation.
As respects the debts of the estate of the former husband, *208 paid bj complainant, the payment was voluntary and officious, on his part, and he is without remedy.
As respects the payments or advances made by the complainant, for the defendants, (the children of Daniel Jones,) which constitute a personal demand against each of said defendants, in favor of complainant; he, as a creditor, is entitled to satisfaction of said demands out of the fund arising from the sale of said land, in the hands of the personal representative of Cantwell, the purchaser; which fund was attached in this suit — the defendants, the Joneses, to whom said fund belongs, being non-residents.
Decree reversed.